ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
VICKI CHOU (Cal. Bar No. 248598)
Assistant United States Attorney
General Crimes Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8692
Facsimile: (213) 894-0141
E-mail: vicki.chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT GLENN JOHNS and JASON KNOLES,<br><br>Defendants. | No. CR 11-841-DSF<br><br>GOVERNMENT'S MOTION IN LIMINE RE PROPER SCOPE OF SELF-DEFENSE AND EVIDENCE OF CHARACTER OF VICTIM; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing Date: February 9, 2012<br>Hearing Time: 2:30 p.m.<br><br>Trial Date: February 21, 2012<br>Trial Time: 8:30 a.m. |

TO DEFENDANTS AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Court's Order of November 17, 2011 (Doc. 47), on February 9, 2012, in the Courtroom of the Honorable Dale S. Fischer, United States District Judge, plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Vicki Chou, will bring on for hearing the following

motion for an order concerning the scope of defendants' presentation of evidence or argument in support of a claim of self-defense and the admissibility of evidence concerning the victims' characters and its effect on the admissibility of evidence of the defendants' characters.

This motion is based on this notice, the attached memorandum of points and authorities, all documents and records previously filed in this matter, and such additional evidence or argument that the Court may wish to consider or direct the government to submit.

DATED: January 5, 2012

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

/s/
VICKI CHOU
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITES . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . 1

I INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . 1

II BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . 1

III DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . 4

A. A MOTION IN LIMINE IS AN APPROPRIATE MEANS FOR TESTING THE SUFFICIENCY OF A PROFFERED DEFENSE . . . . . . . . 4

B. AS A MATTER OF LAW, DEFENDANTS SHOULD BE PRECLUDED FROM ASSERTING A CLAIM OF SELF-DEFENSE . . 5

1. Legal Standard . . . . . . . . . . . . . . . . . 5

2. Defendants Cannot Meet the Elements of Immediacy Or Reasonably Necessary Use of Force . . . . . . . 7

3. Defendants Cannot Make a Claim of “Preemptive” or “Preventative” Self-Defense . . . . . 8

C. EVIDENCE OF THE VICTIMS’ CHARACTER FOR VIOLENCE MAY ONLY BE RECEIVED IN THE FORM OF REPUTATION OR OPINION AND NOT IN THE FORM OF SPECIFIC INSTANCES OF VIOLENT CONDUCT . . . . . . . . . . . . . . . . . . . . . . 11

D. PLACING IN ISSUE THE PROPENSITIES AND CHARACTER OF THE VICTIM PLACES IN ISSUE A DEFENDANT'S OWN PROPENSITIES FOR VIOLENCE . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES


CASES PAGE(S)

Mathews v. United States, 485 U.S. 58 (1988) . . . . . . . . . . . . . . . . . . . . 6

Stevenson v. United States, 162 U.S. 313 (1896) . . . . . . . . . . . . . . . . . . . 6

United States v. Bailey, 444 U.S. 394 (1980) . . . . . . . . . . . . . . . . . . 5, 6

United States v. Biggs, 441 F.3d 1069 (9th Cir. 2006) . . . . . . . . . . . . . . . 5

United States v. Haynes, 143 F.3d 1089 (7th Cir. 1998) . . . . . . . . . . . . . 9, 10

United States v. Jones, 542 F.2d 661 (6th Cir. 1976) . . . . . . . . . . . . . . . 4

United States v. Keiser, 57 F.3d 847 (9th Cir. 1995) . . . . . . . . . . . . passim

United States v. Kinslow, 860 F.2d 963 (9th Cir. 1988) . . . . . . . . . . . . . . 5

United States v. Peltier, 693 F.2d 96 (9th Cir. 1982) . . . . . . . . . . . . . 4, 5

United States v. Shapiro, 669 F.2d 593 (9th Cir. 1982) . . . . . . . . . . . . 4, 5

United States v. Slocum, 486 F. Supp. 2d 1104 (C.D. Cal. 2007) . . . . . . . . . 9, 10

STATUTES

18 U.S.C. § 113(a)(1) . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 113(a)(3) . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Crim. P. 12(b), (e) . . . . . . . . . . . . . . . . 4

Fed. R. Evid. 401 . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Evid. 404 . . . . . . . . . . . . . . . . . . 11, 12, 13

Fed. R. Evid. 405 . . . . . . . . . . . . . . . . . . . 12, 13

MEMORANDUM OF POINTS AND AUTHORITIES

I

INTRODUCTION

For the reasons set forth below, the government requests an order restricting defendants' presentations of evidence or argument in support of a claim of self-defense or duress to the legally cognizable scope of those defenses. The government also seeks an order concerning the scope of admissible character evidence should a defendant place his own character in issue by presenting evidence of the character of a victim. Although neither defendant has yet produced any reciprocal discovery or announced an intent to pursue a claim of self defense, both defendants have sought discovery related to past assaults committed by the victims in this case and counsel for defendant Jason Knoles has indicated that he may seek a continuance of the trial date to investigate the past assaults by the victims. As set forth below, the government believes that facts in this case do not support a claim of self defense and that, furthermore, the Rules of Evidence will not allow defendants to present evidence regarding specific incidents of past conduct by the victims. Therefore, the government hopes that early resolution of this motion will moot defendant Knoles' reasons for a continuance and allow the trial to proceed as scheduled.

II

BACKGROUND

Count One of the indictment charges defendants Robert Glenn Johns ("defendant JOHNS") and Jason Knoles ("defendant KNOLES")

with assault with the intent to commit murder, in violation of 18 U.S.C. § 113(a)(1). Count Two charges defendant JOHNS and defendant KNOLES with assault with a dangerous weapon with intent to cause bodily harm, in violation of 18 U.S.C. § 113(a)(3).[1] Counts One and Two of the two-count indictment relate to defendants' July 28, 2011 attempted murder of United States Bureau of Prisons ("BOP") inmates P.M. and C.T. at United States Penitentiary in Victorville, California (“USP Victorville”).

Both defendants are members of a white supremacist gang, the California Boys Aryan Brotherhood. Victims P.M. and C.T. are both members of the Texas Aryan Brotherhood. On July 28, 2011, both defendants and both victims were inmates at USP Victorville. The assaults took place in housing unit 6B and were captured on video surveillance.

At approximately 5:52 P.M. on July 28, 2011, video surveillance shows P.M. and C.T. standing near the railing on the second floor, in proximity to each other. There is a clear image of C.T. walking to the railing and leaning over it, so that his elbows are over the railing and his hands are clasped, a relaxed position. Defendants KNOLES and JOHNS approach C.T. and P.M. P.M. begins running away almost immediately.[2] Defendant KNOLES

---

[1] Count Two additionally charged John Javilo McCullah (“defendant McCullah”) with assault with a dangerous weapon with intent to do bodily harm. On October 25, 2011, the Court granted the government’s motion to dismiss the case as to defendant McCullah. Accordingly, this motion does not discuss defendant McCullah’s conduct.

[2] In a statement following the incident, C.T. admitted that he was a little naive and did not realize what was going on as quickly as P.M. did.

pursues him, down the stairs to the first floor. Once on the first floor, defendant KNOLES catches up to P.M. and stabs him repeatedly with a knife. The video surveillance shows P.M. taking a defensive position toward defendant KNOLES and repeatedly trying to escape the reach of defendant KNOLES, but KNOLES continues to assault P.M. By the end of the assault, P.M. is on the floor in a fetal position while defendant KNOLES continues to stab him. P.M. sustained approximately 26 stab wounds to his side, back, stomach, and neck.

At the approach of the defendants, C.T. does not flee immediately. The video surveillance reflects C.T. leaning back in a defensive position upon approach by defendant JOHNS. Defendant JOHNS stabs C.T. several times. C.T. manages to break away and runs down the stairs. Defendant JOHNS pursues him. On the first floor, defendant JOHNS temporarily stops his pursuit of C.T. to join in the attack on P.M. Then, defendant JOHNS resumes his assault of C.T. During the entire attack, C.T. alternates between trying to defend himself and running away from defendant JOHNS. Even after BOP Officers intervene and escort defendant JOHNS through the unit, JOHNS breaks away from officers to kick C.T. (who is lying on the ground) in the head. This later assault is captured on the video surveillance and takes place approximately 3 minutes after the stabbing. C.T. sustained stab wounds to his back, torso, and head.

According to an evaluation conducted by the BOP after the assault, defendant JOHNS reported no injuries. Staff observed minor contusions on his face and minor abrasion on his trunk and knees. No written evaluation of KNOLES has been located; however

a form record of the incident reflects that the level of medical attention required could be provided at the institutional level. In contrast, both victims were transported via air ambulance to local trauma centers, due to the extent of their life-threatening injuries. Homemade weapons were recovered from both defendants -- one from defendant JOHNS as he held it and one from defendant KNOLES after it fell to the floor after he tried to place it inside his pants. Both weapons were fashioned after knives, with sharpened metal blades and attached handles of a non-metal, graspable material.

## III

## DISCUSSION

### A. A MOTION IN LIMINE IS AN APPROPRIATE MEANS FOR TESTING THE SUFFICIENCY OF A PROFFERED DEFENSE

A motion is an appropriate means for testing the sufficiency of a proffered defense and seeking preclusion of evidence concerning the proffered defense if the evidence to be offered by a defendant in support of the defense is found to be insufficient or if the defense is precluded as a matter of law. United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); Fed. R. Crim. P. 12(b)(2) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); see also Fed. R. Crim. P. 12(e). Generally, such motions are capable of pre-trial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976). A number of courts have specifically approved the pre-trial

exclusion of evidence relating to affirmative defenses which were not supported by sufficient offers of proof or precluded as a matter of law. See United States v. Bailey, 444 U.S. 394 (1980); United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988); Peltier, 693 F.2d at 98; Shapiro, 669 F.2d at 596.

B. AS A MATTER OF LAW, DEFENDANTS SHOULD BE PRECLUDED FROM ASSERTING A CLAIM OF SELF-DEFENSE

Given the video recordings and other evidence that defendants were the aggressors in the assaults, defendants will be unable to make any bare minimum showing necessary to raise a claim of self-defense, and should therefore be precluded from making such a claim, including in opening statement.

1. Legal Standard

The elements of self-defense, properly defined, are: (1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force; and (2) the use of no more force than was reasonably necessary under the circumstances. See Ninth Cir. Model Jury Instr, (Crim.) No. 6.8 [Self-Defense] (2010 ed.); United States v. Biggs, 441 F.3d 1069, 1071 (9th Cir. 2006); United States v. Keiser, 57 F.3d 847, 851 (9th Cir. 1995) ("The model instruction accurately states the elements of self-defense and defense of another in this Circuit."). In addition, a defendant's use of force likely to cause death or great bodily harm is justified in self-defense only if defendant reasonably believed that such force was necessary to prevent death or great bodily harm. Id.

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists

evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988) (citing Stevenson v. United States, 162 U.S. 313 (1896)). In United States v. Bailey, the Supreme Court held: "[I]t is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense...." 444 U.S. 394, 415 (1980). Without such a showing, "the trial court and jury need not be burdened with testimony supporting other elements of the defense," and defendants are not entitled to turn this trial "into a hearing on the current state of the federal penal system." Id. at 416-17.

Accordingly, if defendants are unable to make a showing as to all of the necessary elements of self-defense, i.e., the elements of immediacy and the use of no more force than reasonably necessary, evidence that would only be relevant as to other elements of self-defense should be excluded from trial. Without evidence that could support a finding as to each of the elements of self-defense, evidence in support of the other elements of self-defense: (1) would not meet the definition of "relevant evidence," which limits the scope of relevant evidence to that evidence that has a tendency to make more probable or less probable the existence of any fact that is of consequence to the determination of the action, Fed. R. Evid. 401; and (2) could only serve to confuse the issues to be tried, mislead the jury, and waste time, Fed. R. Evid. 403.

//

2. Defendants Cannot Meet the Elements of Immediacy Or Reasonably Necessary Use of Force

Neither defendant can proffer any evidence from which a rational juror could conclude that either defendant, at the time of the attacks against victims P.M. and C.T., was defending himself against the "immediate use of unlawful force" or that either defendant "use[d] no more force than appears reasonably necessary under the circumstances." Given that the force defendants used against the victims was obviously "likely to cause death or great bodily harm," defendants would need to demonstrate that the immediate threat posed by the victims was a threat of death or great bodily harm, which they also cannot do.

As summarized above, the video recordings and other evidence demonstrate that the defendants aggressively pursued the victims, ran after them as the victims fled down the stairs, and stabbed them repeatedly. Defendant KNOLES continued to stab P.M. even when P.M. was on the floor, curled into a fetal position. Defendant JOHNS broke off from his pursuit of C.T. to attack P.M., then returned to his assault of C.T., continuing the assault even when C.T. was lying on the floor and defendant JOHNS was surrounded by correctional officers. No weapons were recovered from the victims and their injuries were much more severe than those of the defendants.

At no time during the assaults does either of the victims display any weapon or appear to provoke either defendant JOHNS or defendant KNOLES in any way. Indeed, each victim attempts to run away from his assailant, down the stairs to another level, and is followed and further assaulted. There is thus no evidence that

the victims posed any immediate threat to defendants, and even if there were some assault or provocation by the victims not captured by the video or observed by the correctional officers on-duty, the use of weapons by the defendants against the unarmed victims nullifies any claim that the use of force was no more than reasonably necessary under the circumstances.

In the absence of sufficient evidence supporting each of the indispensable elements of the affirmative defense, defendants should not be permitted to offer evidence or otherwise make reference to facts or evidence relevant to any element of self defense, including, for example, claims that the defendants feared gang violence from the victims, or that the victims had reputations for violence or committed prior specific acts of violence. Furthermore, without evidence to support a finding of self-defense, defendants should not be entitled to a self-defense instruction and should not be permitted to present such a defense or make reference in opening statement, through the questioning of witnesses or the presentation of other evidence, or in argument, to self-defense.

3. Defendants Cannot Make a Claim of “Preemptive” or “Preventative” Self-Defense

Defendants may seek to put on a defense based on preemptive or preventative self-defense, claiming that they assaulted the victims to keep from being assaulted or killed in the future. Inquiries by defense counsel about prior conduct and gang status of the victims suggest that this will be the defense strategy at trial. However, there is no "law of the jungle defense" in prison assault and attempted murder cases such as this. Courts

of the United States also do not recognize the concept of "preemptive" or "preventative" self-defense and have refused to permit the presentation of such claims as, essentially, requests for jury nullification in the guise of a legitimate defense. See, e.g., United States v. Haynes, 143 F.3d 1089, 1090-91 (7th Cir. 1998).

In rejecting defense requests that the jury be instructed on self-defense, imperfect self-defense, and duress in a RICO and VICAR murder case brought against several Aryan Brotherhood ("AB") members, the Honorable David O. Carter, United States District Judge for the Central District of California, wrote about a claim of "self-defense" similar to that apparently being advanced here:

> Defendants' conduct can most generously be characterized as preventive self-defense, a concept that finds no support in state or federal law.[3] Preventive self-defense is an offensive concept, properly understood to constitute aggression, and is, in fact, the opposite of defense. To endorse preventive self-defense in the prison context would be to transform correction institutions into combat zones, in which legal sanction is granted to inmates who would sooner kill a potential enemy than seek assistance from the prison administration.

United States v. Slocum, 486 F. Supp. 2d 1104, 1109-10 (C.D. Cal. 2007). Judge Carter also referenced Judge Easterbrook's opinion in United States v. Haynes:

---

[3] Judge Carter also recognized that "preventive self-defense" is also "[im]permissible under international law." Slocum, 486 F. Supp. 2d at 1109 n.2 (citing International Military Tribunal (Nuremberg) Judgment and Sentences, Oct. 1, 1946, reprinted in 41 Am. J. Int'l L. 172, 205 (1947) ("Preventive action in foreign territory is justified only in the case of an instant and overwhelming necessity for self-defense, leaving no choice of means and no moment for deliberation.") (internal quotation marks omitted)).

> Under the law of the jungle a good offense may be the best defense. But although prisons are nasty places, they are not jungles -- and it is the law of the United States rather than Hobbes' state of nature that regulates inmates' conduct.
>
> . . .
>
> If prisoners could decide for themselves when to seek protection from the guards and when to settle matters by violence, prisons would be impossible to regulate. The guards might as well throw the inmates together, withdraw to the perimeter, and let them kill one another . . . .

Id. at 1110 (quoting Haynes, 143 F.3d at 1090 and citing Anthony Simones, Applying Nineteenth Century Ideas to a Twenty-First Century Problem: The Law of Self-Defense and Gang-Related Homicide, 20 S. Ill. U. L.J. 589, 604 (1996) ("To adopt the law of the jungle is not to refine the concepts of self-defense; it is to abrogate them.")).

In the instant case, defendants armed themselves with prison-made knives and attacked two unarmed men, C.T. and P.M., even as the victims ran away, down a flight of stairs, to escape. The attacks are captured on video, including the brutal assaults made on the victims even after each had fallen to the floor –- defendant KNOLES continuing to stab P.M. after he was in a fetal position and defendant JOHNS kicking C.T. after C.T. had been lying on the floor for several minutes. As explained in the previous section, neither defendant can make any claim that he held "a reasonable belief that the use of force was necessary to defend himself or another against an immediate use of force" or that either used "no more force than was reasonably necessary under the circumstances." These elements of self-defense do not change even if defendants allege some latent fears about violent acts by the victims or preexisting gang warfare.

Because no reasonable jury could find that defendants were not the aggressors in the assaults on P.M. and C.T., defendants will not be entitled to a self-defense instruction. They also should not be permitted to present what is in reality a jury nullification "defense" in the guise of "preventative" or "preemptive self-defense," either in opening statement, through the questioning of witnesses or the presentation of other evidence, or in argument.

C. EVIDENCE OF THE VICTIMS’ CHARACTER FOR VIOLENCE MAY ONLY BE RECEIVED IN THE FORM OF REPUTATION OR OPINION AND NOT IN THE FORM OF SPECIFIC INSTANCES OF VIOLENT CONDUCT

Counsel for defendant KNOLES has indicated that he seeks to conduct a more in-depth investigation into prior assaults by the victims. Counsel for defendant JOHNS has also sought discovery into the history of the victims. Although the Federal Rules of Evidence allow defendants to proffer character evidence about victims in assault cases where self defense is at issue, the Rules of Evidence limit the means through which this character evidence may be offered. Character of the victim is not an essential element of any claim or defense in the instant case. Therefore, defendants cannot proffer specific acts of violence by the victims to prove character, and such acts have no other relevance.

Federal Rule of Evidence 404(a) provides that, subject to specific exceptions, "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion." Fed. R. Evid. 404(a). One of the exceptions to the general rule is that "[i]n a criminal case . . . evidence of a pertinent trait of

character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same." Fed. R. Evid. 404(a)(2). Where a defendant charged with an assault asserts a claim of self-defense, the victim's "violent disposition" is "the sort of evidence this rule was intended to encompass." United States v. Keiser, 57 F.3d 847, 853 (9th Cir. 1995) (citing Advisory Committee note to Rule 404 ("Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray . . ."). Moreover, a defendant's "personal knowledge" of the victim's propensity for violence is simply not a prerequisite for admission of victim character evidence under Rule 404(a)(2)." Id. at 855.

Once a court determines that character evidence is admissible under Rule 404, however, it must next turn to Federal Rule of Evidence 405 to determine what form that evidence may take. Id. at 855. Rule 405, entitled "Methods of Proving Character," provides:

> (a) Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.
>
> (b) Specific instances of conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

Fed. R. Evid. 405. In terms of the "form of the evidence" of a victim's "violent disposition," the Ninth Circuit has held that "only reputation or opinion evidence is proper to show that the victim of an assault had a propensity toward violence." Keiser,

57 F.3d at 855 (citing Fed. R. Evid. 405(a)). As the court in Keiser recognized, evidence of a victim's character for violence does not establish an essential element of a charge, claim, or defense, and proof of character by specific instances of the victim's conduct is accordingly not admissible.[4]

Accordingly, should either defendant choose to place in issue the character of either of the victims, he may present evidence of the victim's character only through reputation or opinion evidence, and proof of character by specific instances of the victim's conduct is accordingly not admissible.

D. PLACING IN ISSUE THE PROPENSITIES AND CHARACTER OF THE VICTIM PLACES IN ISSUE A DEFENDANT'S OWN PROPENSITIES FOR VIOLENCE

By placing in issue a victim's character under Rule 404(a)(2), a defendant also places in issue his own character, under Federal Rule of Evidence 404(a)(1). Rule 404(a)(1) recognizes the admissibility of evidence, "[i]n a criminal case, . . . if evidence of a trait of character of the alleged victim of the crime is offered by an accused and admitted under Rule 404 (a)(2), evidence of the same trait of character of the accused offered by the prosecution." Fed. R. Evid. 404(a)(1). Once

---

[4] In Keiser, the Ninth Circuit held:

> The relevant question should be: would proof, or failure of proof, of the character trait by itself actually satisfy an element of the charge, claim, or defense? If not, then character is not essential and evidence should be limited to opinion or reputation.

Id. at 856. "[W]ith respect to a crime, the [district court is to] look to the indictment or an authoritative statement of the claimed defense. The inquiry would be legal rather than factual, categorical rather than particular to the case at hand." Id. n. 20.

evidence of a victim's character for violence has been placed in issue by a defendant, the defendant's character for violence therefore also becomes an issue. Depending on the manner in which a defendant chooses to place his propensity for violence in issue, he may -- and, here, almost certainly would -- open the door to the government's presentation of evidence of specific instances of that defendant's conduct that might not otherwise be admissible.

## IV

## CONCLUSION

For the reasons discussed above, the government requests an order restricting defendants' presentations of evidence of "self-defense" to that allowed under Ninth Circuit law and precluding defendant from offering any opening statement, evidence, or argument concerning a "preemptive" or "preventative self-defense."

The government further requests an order restricting the presentation of evidence concerning the character of either of the victims to reputation and opinion evidence only and precluding either defendant from offering any evidence of specific instances of violent conduct by either of the victims.